IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEBORAH RICE,**                                                   Case 4:15 CV 235

    Plaintiff,

    v.                                                Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.                                  MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Deborah Rice ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 405(g). The parties consented to the exercise of jurisdiction by the undersigned in accordance with 28 U.S.C. §636(c) and Local Rule 72.2(b)(1). (Doc. 7). For the reasons stated below, the Commissioner's decision is affirmed.

### PROCEDURAL BACKGROUND

Plaintiff filed for DIB on November 28, 2011, alleging a disability onset date of December 31, 2008.[1] (Tr. 153-59). Plaintiff applied for benefits due to neck injury and fusion of the C5, C6, and C7 vertebrae. (Tr. 89). Her claim was denied initially (Tr. 89-95) and upon reconsideration (Tr. 97-105). Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 124). Plaintiff, represented by counsel, and a vocational expert ("VE") testified at a hearing before the ALJ on August 27, 2013, after which the ALJ found Plaintiff not disabled.

---

1. Plaintiff later amended her alleged onset date to September 17, 2009. (Tr. 16, 41).

(Tr. 13-32, 37-70). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1); 20 C.F.R. §§ 404.955, 404.981. Plaintiff filed the instant action on February 5, 2015. (Doc. 1).

**FACTUAL BACKGROUND**

*Personal Background and Testimony*

Plaintiff was born on November 6, 1953, and was 55 years old as of September 17, 2009, her alleged onset date. (Tr. 41). She graduated high school and had past work as an administrative assistant, which she last performed in December 2008. (Tr. 41-42, 188). She lived with her husband in a one-story home. (Tr. 44).

Plaintiff testified she could not work because she was unable to sit for extended periods particularly with her arms extended, as would be necessary to work at a computer. (Tr. 44). She also testified to "horrible headaches" up to three times a week which lasted 24-48 hours. (Tr. 44, 49). The headaches caused dizziness, nausea, light sensitivity, and trouble concentrating; and she reported there was no relief for the pain. (Tr. 48-49). Plaintiff reported consistent pain, muscle spasms, and difficulty turning her neck which she attributed to her C5-C7 fusion surgery and a car accident in 2009. (Tr. 44-45, 49). She also complained of bursitis in her right hip and consistent pain in her shoulders which prevented her from reaching overhead. (Tr. 45-49). As to her medications, Plaintiff reported Percocet made her drowsy and nauseous and muscle relaxers also made her sleepy. (Tr. 46-47). But she stated she tried to avoid taking prescription medication because she did not want to become addicted. (Tr. 46). As of March 2013, Plaintiff reported taking Percocet, Flexeril, Aleve, and ibuprofen as needed for pain. (Tr. 235).

Her daily routine involved reading the newspaper in a recliner, getting dressed, and depending if it was a "good day", performing light housework; however, she only had one or two

"good days" a week. (Tr. 51). She also testified that she prepared quick meals for herself and her husband and in the afternoon, she visited with her daughters by driving a golf cart across fields to their home. (Tr. 52-53). Plaintiff reported she slept terribly and woke every few hours to change positions. (Tr. 53-54). She stated she does not perform any shopping without her husband and she rarely socializes, except with her daughters. (Tr. 55). She also stated she needed help performing a daily bath. (Tr. 228). Plaintiff admitted she had driven to Alaska and Florida with her husband in 2010 but stated she needed multiple pillows to stabilize her during the drive and they made frequent stops. (Tr. 56-58). She estimated her pain on a normal day was between a seven or eight on a ten point scale. (Tr. 61).

*Relevant Medical Evidence*

In 2002, Plaintiff had cervical discectomy and fusion at C5-C7, and until a car accident in September 2009, was asymptomatic. (Tr. 247). After that point, Plaintiff complained of headaches and impairing neck pain; her primary care physician, Debra Lehrer, M.D., prescribed pain relievers and physical therapy. (Tr. 247, 293-95, 322). An x-ray in December 2009, showed "slight anterior subluxation of C3…mild disc space narrowing at C4-C5… [and] mild right-sided foraminal narrowing at C6-C7". (Tr. 326). Her physical therapy produced some relief in both her headaches and neck pain level (Tr. 328-29, 331, 334, 345-47, 349, 352, 353); but her complaints of headaches and neck pain persisted (Tr. 330, 332-33, 335-36, 338, 344, 348-49, 351, 353, 355).

A MRI in May 2010, showed some degenerative changes at C4-C5; and Michael J. Smith, M.D., recommended on two different occasions, if conservative treatment failed, she could be a candidate for another fusion surgery. (Tr. 247, 360, 362).

In May 2010, Plaintiff began seeing Karen Gade-Pulido, M.D., for pain management. (Tr. 266-68). Plaintiff reported an increase in neck pain and mobility, frequent headaches, and

3

radiating pain into her shoulder blades. (Tr. 266). On physical examination, she had moderately reduced cervical spine range of motion, moderate degree of spinal and bilateral shoulder spasms, full range of motion in the upper extremities without complaints of pain, and normal strength bilaterally of upper and lower extremities. (Tr. 267). Dr. Gade-Pulido administered trigger point injections and gave her Lidoderm patches for pain relief. (Tr. 267-68).

A month later, Plaintiff reported minimal pain relief following the trigger point injections but they were again administered to her. (Tr. 264). On physical examination, she had increased pain with extension and more significant spasms on palpitation, but otherwise her status remained unchanged. (Tr. 264). Dr. Gade-Pulido diagnosed her with degenerative cervical spondylosis and reactive myofascial pain. (Tr. 265). Through these months, Plaintiff reported persistent neck pain to Dr. Lehrer but on examination her neck was noted as "supple". (Tr. 291-92).

In January 2011, Dr. Gade-Pulido and Vladimir Djuric, M.D., opined Plaintiff would need cervical medial branch radiofrequency neurotomy to address the pain caused by her cervical facet joints. (Tr. 262-63). On June 28, 2011, Plaintiff returned to Dr. Gade-Pulido, after a year's absence; Dr. Gade-Pulido reported some pain relief from facet blocks performed by Dr. Djuric, but Plaintiff denied any relief. (Tr. 261, 292, 365). Plaintiff also stated radiofrequency ablation was unsuccessful at reducing her pain. (Tr. 261). Complaints of frequent headaches persisted but Plaintiff stated she "suffers through it" without medication other than Aleve or Advil. (Tr. 261). On physical examination, Dr. Gade-Pulido observed no numbness, parasthesis, or weakness in either of her upper or lower extremities, normal strength, but moderate reduction in cervical spine range of motion. (Tr. 262). In August 2011, Plaintiff reported little relief from

4

medications but admitted to not taking them regularly; she also reported numbness in the shoulders and neck pain. (Tr. 256-57).

Plaintiff returned in September 2012 to Dr. Gade-Pulido and again complained that none of her treatments were effective at reducing the pain of either her headaches or in her neck. (Tr. 373). She reported numbness in her fingers, difficulty manipulating with her hands, and reduced hand strength. (Tr. 373). She also reported pain in her right hip that was not reduced by injections. (Tr. 373). On examination, she had reduced range of motion, significant spasm, and was tender to palpitation in the neck and shoulder area. (Tr. 374). Dr. Gade-Pulido recommended Botox injections and prescription pain relievers. (Tr. 375).

In November 2012, Dr. Gade-Pulido informed Plaintiff she had carpal tunnel syndrome ("CTS") but there was no evidence of cervical radiculopathies, as shown by electrodiagnostic testing. (Tr. 379). She also received another injection in an effort to reduce right hip pain. (Tr. 379, 381-82). A month later, Plaintiff reported the anti-inflammatories and the injection helped to reduce her hip pain. (Tr. 382-83). At this visit, Plaintiff also reported that Percocet was helping with her overall pain, although she was reluctant to take it. (Tr. 383). Her reduced range of motion and tenderness to palpation remained consistent with past visits. (Tr. 378, 384). Dr. Gade-Pulido again recommended injections and medication, rather than surgery. (Tr. 383, 385).

On April 29, 2013, Plaintiff still complained of persistent neck pain and headaches but reported some relief with Percocet and Flexeril; otherwise, her physical examination remained the same. (Tr. 386-88). A few months later, Dr. Gade-Pulido prescribed Topamax to Plaintiff for help with her severe headaches. (Tr. 392).

*Opinion Evidence*

On November 5, 2012, Dr. Gade-Pulido identified chronic pain, reduced range of motion, and severe headaches as Plaintiff's symptoms. (Tr. 317-18). She noted Plaintiff's reports of drowsiness with medication and recounted depression as affecting Plaintiff's condition. (Tr. 318-19). Dr. Gade-Pulido opined Plaintiff could walk half a block without severe hip pain; could sit for twenty minutes at a time; could stand for only ten minutes at a time; and could only sit/stand/walk for less than two hours in an eight hour day. (Tr. 319). She also opined Plaintiff would need a sit/stand option, would be required to walk for two minutes every twenty minutes, and would need a five minute break every twenty minutes to lie down. (Tr. 319-20). Dr. Gade-Pulido concluded Plaintiff was capable of only occasionally carrying less than ten pounds; could rarely look down or up, or hold her head still; and could occasionally turn her head to the left or right. (Tr. 320). Further, she restricted Plaintiff to occasionally twisting and stooping, and rarely crouching or climbing ladders or stairs. (Tr. 320). Plaintiff was also restricted in her ability to reach, handle, and finger. (Tr. 320). Dr. Gade-Pulido believed Plaintiff would be off-task 25% of the day or more, was capable of low stress work, and would be absent from work more than four days a month. (Tr. 321).

***State Agency Reviewers***

On January 12, 2012, Sarah Long, M.D., opined Plaintiff could occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand/walk/sit six hours in an eight hour day; frequently climb ramps or stairs; frequently, balance, kneel, or crawl; never climb ladders, ropes, or scaffolds; and occasionally reach overhead bilaterally. (Tr. 93-94).

On reconsideration on May 9, 2012, Leon Hughes, M.D., concluded there were no material changes to Plaintiff's condition and affirmed the RFC of Dr. Long. (Tr. 102-03).

*ALJ Decision*

In September 2013, the ALJ found Plaintiff's date last insured ("DLI") was December 31, 2012. (Tr. 19). She also found Plaintiff had the severe impairments of status post remote cervical fusion surgery with cervical sprain/strain, degenerative cervical spondylosis, cervical spondylolisthesis, cervicalgia, tension headache, migraine, and bilateral carpal tunnel syndrome; but these severe impairments did not meet or medically equal any listed impairment. (Tr. 19). The ALJ then found Plaintiff had the RFC to perform light work except she could never climb ladders, ropes, scaffolds; only occasionally crawl or reach overhead with the bilateral upper extremities; frequently climb stairs and ramps, balance, and kneel; and frequently, but not continually, handle and finger bilaterally. (Tr. 21). Based on the VE testimony, the ALJ found Plaintiff could perform her past work as an accounting clerk. (Tr. 31).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court

cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. § 404.1520 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and

meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

In her two assignments of error, Plaintiff alleges the ALJ erred because (1) she failed to provide good reasons for the weight given to Dr. Gade-Pulido's opinion; and (2) she improperly weighed Plaintiff's credibility. (Doc. 11). Each argument will be addressed in turn.

### *Treating Physician*

Generally, the medical opinions of treating physicians are afforded greater deference than those of non-treating physicians. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007); *see also* SSR 96-2p, 1996 WL 374188. "Because treating physicians are 'the medical professionals most able to provide a detailed, longitudinal picture of [a plaintiff's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone,' their opinions are generally accorded more weight than those of non-treating physicians." *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. § 416.927(d)(2)).

A treating physician's opinion is given "controlling weight" if it is supported by (1) medically acceptable clinical and laboratory diagnostic techniques; and (2) is not inconsistent with other substantial evidence in the case record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). The requirement to give controlling weight to a treating source is presumptive; if the ALJ decides not to do so, he must provide evidentiary support for such a finding. *Id.* at 546; *Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-77 (6th Cir. 2013). When the physician's medical opinion is not granted controlling weight, the ALJ must give "good reasons" for the weight given to the opinion. *Rogers*, 486 F.3d at 242 (quoting 20 C.F.R. §

416.927(d)(2)).

When determining weight and articulating good reasons, the ALJ "must apply certain factors" to the opinion. *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 660 (6th Cir. 2009) (citing 20 C.F.R. § 404.1527(d)(2)). These factors include the length of treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the treating source. *Id.* While an ALJ is required to delineate good reasons, she is not required to enter into an in-depth or "exhaustive factor-by-factor analysis" to satisfy the requirement. *See Francis v. Comm'r of Soc. Sec. Admin.*, 414 F. App'x 802, 804-05 (6th Cir. 2011); *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).

The ALJ found Dr. Gade-Pulido's opinion was not entitled to controlling weight because it was inconsistent with her own treatment records, was provided in "a check-off fashion", and relied heavily on Plaintiff's subjective reports[2]. (Tr. 30). These proffered reasons speak directly to the above required factors: supportability and consistency; thus, if substantial evidence in the record supports the ALJ's reasonings, the Court will affirm. *Jones*, 336 F.3d at 477.

In her decision, the ALJ listed a number of symptoms that Dr. Gade-Pulido reported which were not included in her own treatment records of Plaintiff, such as sensory loss, muscle weakness, crepitus, lack of coordination, and depression. (Tr. 30, 317-19). In reviewing the records of Plaintiff's treatment with Dr. Gade-Pulido, the Court finds there is ample evidence to support the ALJ's conclusion that the objective findings are not consistent with those reported.

---

2. The Court addresses Plaintiff's credibility in a separate section below, finding that the ALJ properly evaluated credibility according to the applicable law and regulations. *See infra* 12-14. Thus, it necessarily follows that the ALJ's reasoning regarding portions of Dr. Gade-Pulido's opinion which rely on the subjective reports of Plaintiff will be affected by Plaintiff's diminished credibility.

10

While Plaintiff reported problems with balance and generalized weakness, on physical examination Dr. Gade-Pulido consistently reported full muscle strength, normal gait, and intact lower extremity sensation and reflexes. (*See* Tr. 257, 262, 264, 267, 374, 378, 384, 388, 391). Further, throughout Dr. Gade-Pulido's treatment of Plaintiff, she never once noted depression rather she noted Plaintiff's mood was consistently euthymic. (*See* Tr. 257, 374, 384, 388, 391). The ALJ also noted the minimal treatment for Plaintiff's hip pain and headaches, as evidenced by Dr. Gade-Pulido not prescribing migraine medication until mid-2013. (Tr. 30, 392). Dr. Gade-Pulido's opinion is also harmed by the conclusory manner in which it was completed. Even when prompted, Dr. Gade-Pulido either did not explain the reasoning for some of the limitations or she did not provide specific limitation estimates for the ALJ to utilize. (Tr. 317-19).

Furthermore, in looking to the remainder of the ALJ's evaluation, she thoroughly discusses the other medical evidence which undermines the severity of Plaintiff's conditions. (Tr. 20-30). On three occasions, Dr. Lehrer reported uninhibited neck motion and full strength and reflexes. (Tr. 291, 292, 295). Physical therapy was somewhat successful at improving her range of motion and Plaintiff's reports of pain during this time frame were consistently lower than elsewhere in the record. (Tr. 328-29, 331, 334, 339, 345-47, 349, 352, 353). Facet block injections and Percocet (which Plaintiff purposefully only took rarely) were both reported to have reduced or controlled her pain. (Tr. 261, 292, 365, 383, 386). Lastly, objective testing including an x-ray, MRI, and electromyography revealed only mild narrowing or subluxation, no cord compression, and no cervical radiculopathy. (Tr. 311-313, 381-82). Although the record contains consistent complaints of pain, the objective reports do not necessarily support severe limitations. Moreover, there is also evidence that Plaintiff's treatment was sporadic (including multiple year-long gaps between visits) which belie the alleged severity of her symptoms.

Overall, the ALJ provided good reasons, with citation to evidence in the record, and adequately discussed medical evidence throughout her opinion which undermined the severity of Plaintiff's condition; such that Dr. Gade-Pulido's opined strict limitations were unsupportable. *See Nelson v. Comm'r of Soc. Sec.,* 195 F. App'x 462, 472 (6th Cir. 2006) (an ALJ can provide indirect attacks on a treating physician's opinion by discussion of the contrary medical evidence elsewhere in her opinion).

*Credibility*

The second assignment of error is confined to whether the ALJ erred in her credibility determination such that Plaintiff's lack of credibility properly undercut the weight of Dr. Gade-Pulido's opinion. (Doc. 11, at 13).

When making a credibility finding, the ALJ must make a finding based on a consideration of the entire record. SSR 96-7p, 1996 WL 374186, *1. But, an ALJ is not bound to accept as credible Plaintiff's testimony regarding symptoms. *Cohen v. Sec'y of Dep't of Health & Human Servs.*, 964 F.2d 524, 529 (6th Cir. 1992). Analysis of alleged disabling symptoms turns on credibility. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726-27 (6th Cir. 2004). "Because of their subjective characteristics and the absence of any reliable techniques for measurement, symptoms are difficult to prove, disprove, or quantify." SSR 82-58, 1982 WL 31378, *1. In evaluating credibility an ALJ considers certain factors:

(i) [A claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [a claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate your pain or other symptoms;

>    (v) Treatment, other than medication, [a claimant] receive[s] or ha[s] received for relief of [Plaintiff's] pain or other symptoms;
>
>    (vi) Any measures [Plaintiff] use or ha[s] used to relieve [a claimant's] pain or other symptoms; and
>
>    (vii) Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3).

Ultimately, it is for the ALJ, not the reviewing court, to judge the credibility of a claimant's statements. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's credibility determination accorded "great weight"). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). The Court is "limited to evaluating whether or not the ALJ's explanations for partially discrediting [claimant's testimony] are reasonable and supported by substantial evidence in the record." *Jones*, 336 F.3d at 476. The Court may not "try the case de novo, nor resolve conflicts in evidence . . . " *Gaffney v. Bowen*, 825 F.2d 98, 100 (6th Cir. 1987).

The ALJ addressed numerous reasons for finding Plaintiff not entirely credible; particularly her activities of daily living, gaps in her treatment history, effects of treatment attempts, and inconsistent medical evidence. (Tr. 22-28). The latter three reasons given for discounting Plaintiff's credibility are contemplated by the regulations as valid factors in determining credibility. *See* § 416.929(c)(3); *Walters,* 127 F.3d at 531. All of these were discussed in the above section and will not be repeated for the sake of brevity; however, the Court finds that these three proffered reasons are supported by substantial evidence in the record.

Thus turning to the final reason given by the ALJ – activities of daily living, the Court finds substantial evidence in the record to maintain that Plaintiff engaged in activities

13

inconsistent with her alleged severity of symptoms. First, the ALJ noted Plaintiff was capable of light housework such as dusting, cleaning sinks and counters, preparing simple meals, folding laundry, and going to the grocery store with her husband; albeit with the caveat that she was only capable of these tasks on "good days". (Tr. 25, 51-55). Second, Plaintiff stated she visits her daughters almost daily by driving a golf cart across a field without a paved path. (Tr. 26, 52-53). Third, she stated she is capable of sitting and reading the newspaper or magazines without difficulty. (Tr. 26, 51). Fourth, Plaintiff reported taking two lengthy car trips, to Alaska and to Florida, without a significant increase in her symptoms frequency or intensity. (Tr. 26, 56-58). While these activities of daily living are certainly not indicative of an ability to perform work on a sustained basis; they do suggest that Plaintiff's capabilities are greater than alleged. Here, the ALJ appropriately considered reported activities of daily living and cited to "demonstrable discrepancies" in the record such that her determination regarding Plaintiff's credibility was supported by substantial evidence. *See Gooch v. Sec'y of HHS*, 833 F.2d 589, 592 (6th Cir. 1987).

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB is supported by substantial evidence, and therefore the Commissioner's decision is affirmed.

 s/James R. Knepp II  
United States Magistrate Judge